IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DUMMEN NA, INC.,**

      Plaintiff,

                                      Civil Action 2:16-cv-00709
                                      Judge Michael H. Watson
     v.                          Magistrate Judge Elizabeth P. Deavers

**PROVEN WINNERS**
**NORTH AMERICA, LLC,** *et al.*,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants' Proven Winners North America, LLC and Plant 21, LLC (collectively, "Defendants") Emergency Motion for Leave to Permit Litigation Counsel to Participate in Reissue Proceedings (ECF No. 57), Plaintiff Dummen NA, Inc.'s Response in Opposition (ECF No. 59), and Defendants' Reply (ECF No. 60). For the following reasons, Defendants' Motion is **DENIED**.

### I. BACKGROUND

Plaintiff filed this action on July 20, 2016 for declaratory judgment of invalidity and non-infringement of a United States patent pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the United States Patent Law, 35 U.S.C. § 1 *et seq.* (Compl., ECF No. 1.) Plaintiff seeks a declaration that U.S. Patent No. 9,313,959 ("'959 Patent") is invalid and not infringed by certain flowering plants it sells. Plaintiff is a corporation organized under the laws of the State of California and having its principal place of business in Ohio. (*Id.* at ¶ 2.)

Defendant Plant21, LLC is a California limited liability company with its principal place of business in California. (*Id.* at ¶ 4.) Defendant Proven Winners North America, LLC is also a California limited liability company having its principal place of business in California. (*Id.* at ¶ 6.) Defendant Plant 21, LLC is the owner of the '959 Patent. (*Id.* at ¶ 5.) Defendant Proven Winners North America, LLC is a licensee of the '959 Patent. (ECF No. 17 at ¶ 7.)

The '959 patent is the subject of the instant action, as well as the subject of a reissue proceeding at the United States Patent and Trademark Office ("PTO"). (Defendants' Motion, ECF No. 57, at p. 3.) Here, Defendants seek leave from the Default Protective Order in this case to allow Defendants' litigation counsel, Thompson Hine LLP, to participate in the concurrent reissue proceeding before the PTO. Defendants seek to permit its litigation counsel to coordinate with its patent prosecution counsel, Pilloff & Passino LLP. Defendants, therefore, move to set aside the Default Protective Order that prohibits Thompson Hine from participating in the reissue proceedings before the PTO. Defendants contend that participation of its litigation attorneys in at the PTO is necessary to ensure that their prosecution counsel do not submit arguments or evidence in the reissue proceeding that would undermine their litigation strategy or otherwise prejudice them in this litigation. (*Id.*)

## II. STANDARD

The Local Patent Rules for the United States District Court for the Southern District of Ohio provide a Default Protective Order for patent infringement cases. Rule 102.2 provides that "[t]he Default Protective Order . . . automatically governs the productions of any documents or information in a Patent Case unless the Court enters an alternative Protective Order." S.D. Ohio Pat. R. 102.2. Paragraph 2.2(a) of the Default Protective Order provides, in pertinent part, that information designated "Highly Confidential Attorney Eyes Only" ("AEO") may be disclosed

only to "outside attorneys of record . . . provided that such does not include any persons participating in the prosecution of any present or future patent application (including the reexamination or reissue of any present or future patent) that is a counterpart to or related to the patents-in-suit. . . ."[1]

Rule 1.2(b) explains more fully:

> A party may designate as "HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY" such materials as the party reasonably and in good faith believes to contain particularly sensitive technical information relating to research for and production of current products; technical, business, and research information regarding future products; non-public and highly sensitive financial information; marketing and sales information, such as marketing plans and forecasts, customer lists, pricing data, cost data, customer orders, and customer quotations; any pending or abandoned patent applications, foreign or domestic; and such other documents, information, or materials that relate to other proprietary information that the designating party reasonably believes is of such nature and character that disclosure of such information would be harmful to the designating party.

Rule 1.3 lists types of information that should not be designated or protected under the Default Protective Order.

District courts have the power to modify protective orders. *In re Upjohn Co. Antibiotic Cleocin Products Liab. Litig.*, 664 F.2d 114, 118 (6th Cir. 1981) ("Clearly, the power of a district judge includes the power to modify a protective order." (citations omitted)). Here, Defendants seek modification of the Default Protective Order. Under these circumstances, the party seeking the modification must show good cause for the modifications sought. *See, e.g.*, *Info-Hold, Inc. v. Muzak Hldgs LLC*, No. 1:11-cv-283, 2012 WL 3061024, at *3 (S.D. Ohio July 26, 2012) (citations omitted); ("The party who seeks to modify [the] protective order has the burden of

---

[1] This type of patent protective order provision is commonly referred to as a "patent prosecution bar." *See Am. Jur. 2d Patents* § 768 ("A patent prosecution bar precludes all persons who had access to the opponent's confidential information produced for trial from working on the patent prosecution on that subject matter.").

establishing good cause for the modification."); *cf. In re Southeastern Milk Antitrust Litig.*, 666 F.Supp.2d 908, 914 (E.D. Tenn. 2009) ("The party seeking modification of the protective order has the burden of establishing cause for the modification."); *Hochstein v. Microsoft Corp.*, No. 04-73071, 2008 WL 4387594, at *2 (E.D. Mich. Sept. 24, 2008) ("It is also within the district court's authority to modify the protective order upon a showing of good cause.").

### III. ANALYSIS

Defendants contend their request will not harm Plaintiff in any way because (1) confidential information disclosed by Plaintiff to Defendants' litigation counsel in discovery is not relevant to the issues in the reissue proceeding; (2) litigation counsel will not use or reveal any of Plaintiff's confidential information in the reissue proceeding; (3) the claims of the reissue application have not been and cannot be broadened to target Plaintiff; and (4) litigation counsel has promised in writing that if any new claims are added to the reissue application, those claims will never be asserted against Plaintiff. (Def's Motion, ECF No. 57, at p. 3-4.)

Defendants aver that in this litigation, Plaintiff has served contentions that include substantially the same arguments raised by the PTO in the reissue proceeding. (Declaration of Jeff Metzcar at ¶ 10 ["Metzcar Decl."].) As such, Defendants suggest that their litigation counsel will be responding to the same invalidity arguments that their prosecution counsel is expected to address first on December 10, 2018 in the reissue proceeding.[2] Litigation counsel for Defendants acknowledge that they have been exposed to confidential information that Plaintiff produced during this litigation. (*Id.* at ¶.) At this juncture, however, Defendants represent that no AEO information has been shared with their prosecution counsel. (*Id.* at ¶ 12.)

---

[2] This impending deadline is the reason Defendants filed their Motion as an "Emergency Motion" and requested expedited briefing. (Defendants' Motion, ECF No. 57, at p. 1-2.)

4

Plaintiff asserts that permitting Defendants' litigation counsel to work with their prosecution counsel presents problems despite Defendants' promises. Plaintiff posits that Defendants' litigation counsel could "inadvertently" or "even subconsciously" reveal Plaintiff's confidential information, which would unmistakably prejudice it. (Plaintiff's Response, ECF No. 59, at p. 5-6.) Defendants counter, however, that Plaintiff will not be prejudiced because they cannot broaden their claims before the PTO by using any confidential information, or otherwise. Defendants note that even if they wanted to broaden the claims they would be prohibited by 35 U.S.C. § 251(d). Under this statute, the window of opportunity to request a broadening reissue is two years, and two years has already passed since the grant of the '959 patent. (Metzcar Decl. at ¶ 6.)

Defendants chiefly contend that they are prejudiced by having to have two sets of counsel where there is no reasonable risk that AEO information will be used to prepare new claims. In particular, Defendant maintain that since "[t]he claims in the reissue proceeding are currently identical to the claims of the asserted '959 patent and, by rule, cannot be broadened because the two-year window of opportunity to request a broadening reissue has passed[,]" the reissue proceeding at hand is "materially the same as a reexamination proceeding" because "in both proceedings the claims can be amended to overcome objections but cannot be broadened."[3] (Def's Motion, ECF No. 57, at p. 6.) Based on this analogy, Defendants cite to a handful of cases for the proposition that because claims in a reexamination proceeding cannot be broadened, the harm of requiring a patent holder to retain separate litigation and reexamination counsel

---

[3] In their Motion, the Defendants cite 35 U.S.C. § 305, which provides that "[n]o proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding." (Defendants' Motion, ECF No. 57, at p. 6.)

outweighs the risk of allowing litigation counsel who have had access to confidential AEO materials, to participate in the reexamination. (*Id.* at 6-7.)

A closer review of the cases cited by Defendants reveal that none supports their position that litigation counsel should be permitted to participate in a reissue proceeding to prevent prosecution counsel from making arguments that are harmful to an underlying infringement action. All of the cited cases deal with an essentially different procedure, namely reexamination proceedings.

Defendants first cite to *Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182 (D. Del. 2010). In *Xerox*, which involved a reexamination proceeding, the court denied the defendants' motion to include patent prosecution bar in an existing protective order. The court held that the plaintiff should not be denied the advice of its trial counsel in amending claims on reexamination. *Id.* at 183. Defendants use this case to support the proposition that "because the claims in a reexamination proceeding cannot be broadened, the harm of requiring a patent holder to retain separate litigation and reexamination counsel outweighs the risk of allowing litigation counsel to participate in the reexamination." (Def's Motion, ECF No. 57, at p. 8.)

*Xerox*, however, is distinguishable. In permitting the plaintiff to use its trial counsel, the court found that the "potential harm in denying plaintiff reexamination counsel of its choice" who had expertise about the patents-at-issue and "[f]orcing plaintiff to rely on less knowledgeable counsel during reexamination would thus increase costs and duplicate effort." *Xerox*, 270 F.R.D. at 185. Here, Defendants never claim that their litigation counsel is particularly knowledge about the patents-in-suit. Rather, Defendants assert that their litigation counsel simply is most knowledgeable about this specific litigation and need to coordinate at the PTO so that the "prosecution counsel does not submit arguments or evidence in the reissue

proceeding" that could undermine its ability to prove infringement or argue for the validity of the '959 patent in this litigation. (Def's Motion, ECF No. 57, at p. 3.)

Defendants' reliance on *Sanders v. Mosaic Co.*, No. 09-00016-CV-W-JTM, 2012 WL 640159 (W.D. Mo. Feb. 27, 2012) is similarly misplaced. There, the court found against imposing a prosecution bar to cover reexamination proceedings noting that access to other party's confidential information is not valuable in reexamination proceedings because of the limited nature of reexamination versus initial patent application proceedings. *Id*. at *3-*4. But, *Sanders* too concerned a reexamination proceeding brought by the defendants rather than a reissue proceeding. *Id.* at *1.

*Hochstein v. Microsoft Corp.*, No. 04-73071, 2008 WL 4387594 (E.D. Mich. Sept. 24, 2008) lends no support to Defendants' cause. Again, this case involves a reexamination proceeding. It came before the Michigan court on an Emergency Motion for leave to permit a party's litigation counsel to participate in reexamination proceedings. *Id.* at *2. In *Hochstein*, however, litigation counsel had years of experience with the case and the prior art "and it would be impossible for another attorney to rise to their level of expertise without assistance." *Id*. at *2. The court also based its decision on the fact that allowing litigation counsel to participate in the reexamination proceedings would significantly lessen the financial burden on the client. In this case, Defendants have made no claim that their litigation counsel are especially well-suited to handle the reissue proceeding or can convey special knowledge to prosecution counsel. Moreover, Defendants have not asserted that permitting litigation counsel to participate in the reissue proceedings would reduce its legal fees. Instead, Defendants' legal fees would increase significantly.

Defendants cite to another reexamination proceeding in support of the same proposition, *NeXedge, LLC v. Freescale Semiconductor, Inc.*, 820 F. Supp. 2d 1040 (D. Ariz. 2011). The court in *NeXedge* declined to impose a patent prosecution bar because the prior art had been identified publicly thereby ameliorating concerns about exchanging confidential information. Further, the parties were not business competitors. *Id.* at 1044. Here, by contrast, Plaintiff and Defendants are business competitors and Plaintiff has a significant interest in protecting its confidential information.

The final reexamination proceeding case that Defendants cite to support the proposition is *Edisync Sys., LLC v. Adobe Sys. Inc.*, No. 12-CV-02231-MSK-MEH, 2013 WL 561474 (D. Colo. Feb. 13, 2013). In that case, the court found that the prosecution bar should not extend to the reexamination because the defendant only put forward "general possibilities" and did not identify "any specific way in which these possibilities will materialize into prejudice in this case." *Id.* at *2. In this case, Plaintiff puts forth specific concerns that Defendants could use its confidential information to prejudice Plaintiff by attempting "to tailor existing claims to overcome rejections, avoid art, and ensnare [Plaintiff's] varieties, without any broadening amendments to the claims." (Pl's Response, ECF No. 59, at p. 6.) Defendants in turn provided a very generalized response: "How? In what way?" (Def's Reply, at 6-7.) Defendants then chide Plaintiff for failing to provide an explanation for how they could use Plaintiffs "breeding histories to 'ensnare' [Plaintiff's] accused varieties *without broadening the claims*." (*Id.* at 7.) However, Plaintiff "is not required to suggest amendments that would capture its own products[.]" *Edisync*, 2013 WL 561474 at *2 (citations omitted).

The Court concludes that a reexamination proceeding and a reissue proceeding are not analogous enough in this instance to permit Defendants litigation counsel and prosecution

counsel to collaborate in the reissue proceeding. 35 U.S.C. § 305, regarding reexaminations provides in pertinent part:

> In any reexamination proceeding under this chapter, the patent owner will be permitted to propose any amendment to his patent and a new claim or claims thereto, in order to distinguish the invention as claimed from the prior art cited under the provisions of section 301, or in response to a decision adverse to the patentability of a claim of a patent.

By contrast, 35 U.S.C. § 251(a), regarding reissues provides in pertinent part:

> Whenever any patent is, through error, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent.

As noted earlier, reissue allows for the broadening of claims, but only within two years of when the original patent was granted. 35 U.S.C. § 251(d). Defendants insist that because two years have already passed since the '959 patent was issued, the reissue proceeding is essentially a reexamination proceeding. Yet, Defendants concede that they fail to cite to cases involving non-broadening reissue proceedings because such cases "could not be located." (Def's Reply, ECF No. 60, at p. 4.)[4] The absence of any authority on the subject makes the Court question the propriety of granting Defendants' request.

In all the cases cited by Defendants, a patent was undergoing reexamination request by an adverse party accused of infringement, where a prosecution bar was not already in place, and the

---

[4] In fact, Defendants go so far as to scold Plaintiff for its lack of cited legal authority, claiming Plaintiff has failed to cite "any cases involving a non-broadening reissue proceeding in which the court imposed a prosecution bar, or any cases in which the court explained that a non-broadening reissue is different from a reexamination in any way that is relevant to the imposition of a prosecution bar." (Defendants' Reply, ECF No. 60, at p. 4.) The lack of cited authority in Plaintiff's Response though should not have surprised Defendants, as they admit that "cases involving non-broadening reissue proceedings could not be located." (*Id.*)

reason the courts declined to enter the prosecution bar was based on efficiency and cost control. This is not an instance in which an opposing party, over whom Defendants have no control, has instituted an adverse reexamination proceeding against them. Instead, Defendants themselves placed their own patent into reissue proceedings. Unlike reexamination instituted by an adverse party, reissue is not an "increasingly important venue for challenging a patent's validity." *Xerox*, 270 F.R.D. at 185. Moving to allow litigation counsel to participate years after they initiated the reissue proceeding and after Plaintiff has produced its confidential AEO information, is indeed the reason prosecution bars are put into effect. *See In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1380 (Fed. Cir. 2010) (noting a significant risk of inadvertent disclosure of confidential information).

Even if the reissue proceeding the '959 patent was "materially the same" as a reexamination because Defendants have no intention to broaden the claims, Plaintiff could still be prejudiced. As Plaintiff points out, Defendants "litigation counsel has already viewed confidential breeding information including, *inter alia*, breeding histories of various Dümmen varieties of Calibrachoa. Defendants could use this information – even subconsciously – to attempt to tailor existing claims to overcome rejections, avoid art, and ensnare Dümmen varieties, without any broadening amendments to the claims." The Court agrees. The prosecution bar is meant to protect against exactly this scenario. *See In re Deutsche Bank Tr. Co. Americas*, 605 F.3d at 1380 (explaining that "[t]he risk of inadvertent disclosure of competitive information learned during litigation" is great for litigation counsel, and such attorneys "would not likely be properly exempted from a patent prosecution bar")[5]; *see also FTC v. Exxon Corp.*,

---

[5] *In re Deutsche Bank Trust Co. Americas* is considered "the Federal Circuit's foundational opinion on patent prosecution bars." *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 125 F. Supp. 3d 1260, 1276 (D.N.M. 2015).

636 F.2d 1336, 1350 (D.C. Cir. 1980) ("[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so.").

The risk that litigation counsel would, even inadvertently, use Plaintiff's confidential information during the reissue proceedings outweighs the benefit of litigation counsel's participation to ensure that their prosecution counsel do not submit arguments or evidence that undermines their litigation strategy in this case. In sum, Defendants have failed to demonstrate that this Court should deviate from the Default Protective Order.

One final note. Although Plaintiff discusses staying the litigation in its Response to Defendants' Emergency Motion (ECF No. 59) and Defendants respond in their Reply (ECF No. 60), the Court notes that neither party has formally moved to stay this pending litigation. The Court, therefore, will not address those arguments at this time. If any party intends to raise this issue before the Court, it may file a separate motion properly supported by legal authority.

## IV. CONCLUSION

For the foregoing reasons, Defendants have failed to demonstrate good cause to modify the Default Protective Order. Defendants' Motion (ECF No. 57) is accordingly **DENIED**.

**IT IS SO ORDERED.**

Date: November 21, 2018        /s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE